CHAEIN, Judge.
George Lee Hawkins was convicted of possession of a firearm by a convicted felon in violation of Code § 18.2-308.2. On appeal, he contends that the trial court erred by denying his motion to suppress the firearm found on his person. Hawkins argues that the trial court erroneously concluded that he consented to the search in question and that the police officer who performed the search “exceeded the scope of a Terry[1] stop [by conducting] a search of the defendant’s person rather than a protective frisk.” For the reasons that follow, we affirm Hawkins’s conviction.
*104 I. BACKGROUND
“When reviewing a denial of a suppression motion, we review the evidence ‘in the light most favorable to the Commonwealth, giving it the benefit of any reasonable inferences.’ ” Elliott v. Commonwealth, 61 Va.App. 48, 51, 733 S.E.2d 146, 148 (2012) (quoting Glenn v. Commonwealth, 49 Va.App. 413, 416, 642 S.E.2d 282, 283 (2007) (en banc), aff'd, 275 Va. 123, 654 S.E.2d 910 (2008)). So viewed, the evidence established that Chesapeake Police Officer Barret C. Ring observed a suspected hand-to-hand drug transaction in an area known as a high crime, open-air drug market shortly after midnight on February 28, 2013.[2] Ring saw Hawkins and another man standing in the street facing a third individual who was later identified as “Hamilton.” Hawkins’s companion completed a hand-to-hand exchange with Hamilton while Hawkins stood nearby. Hamilton then got in the passenger seat of a car waiting across the street, and the car left the area.
Officer Ring stopped the car for a traffic violation at an intersection located within a block of where the exchange occurred.[3] When Ring stopped the car, its driver dropped drug paraphernalia and Ring found “multiple quantities of suspected cocaine” when he searched Hamilton following his arrest. Norfolk police officers arrived at the scene shortly after Officer Ring stopped the car. Officer Ring informed the officers of the hand-to-hand exchange and directed their attention to Hawkins and his companion, who were standing across the street.
Five Norfolk police officers arrived at the scene and approached Hawkins and the other man. The officers asked the men for their identification, and asked them questions about what they were doing on the street that night. The officers did not, however, mention the traffic stop or the narcotics *105 investigation that was being conducted across the street by the Chesapeake police. One of the officers described the tone of the conversation as “completely casual,” and he testified that the officers only intended to identify the men for later investigation. Although there were five officers present, they were not positioned so as to block either Hawkins or his companion from leaving the area.
During the conversation between the officers and the two men, Officer R.A. Mazzio saw a bulge under Hawkins’s shirt. He asked Hawkins if he had “a big cell phone on [his] belt,” and then asked him if he “could do him a favor” by raising his “shirt up a little bit so [Mazzio could] see how it sits.” Mazzio testified that his tone was congenial and even joking during this interaction and that he did not instruct or command Hawkins to raise his shirt.
In response to Mazzio’s request, Hawkins extended his arms completely out to his sides and raised them about halfway up to his shoulders with his palms facing the officers. Hawkins did not say anything or make any other movements for approximately five seconds. After several seconds, an officer lifted the tail of Hawkins’s shirt and revealed the handle of a handgun tucked into his waistband. The officers confiscated the firearm, and Hawkins was arrested for possessing a firearm as a convicted felon. Officer S.A. Bartley took a statement from Hawkins following his arrest. Bartley testified that Hawkins told him that he did not initially tell the officers that he had a weapon because he did not want to startle them, but that he “came around and showed the officers that he ... was indeed wearing a firearm.”
Hawkins moved to suppress the evidence obtained by the officers on February 28, 2013, arguing that he did not consent to a search (specifically, the lifting of his shirt by the officers) and that the officers’ actions exceeded the scope of a search permissible under Terry. The trial court denied his motion. The trial court concluded that Hawkins consented to the search through his actions on the night in question. Additionally, the trial court noted that reasonable suspicion would have *106 supported a Terry frisk for weapons under the circumstances and elaborated on the specific facts of the case that would have given rise to that reasonable suspicion. The trial court, however, expressly held that a Terry stop had not occurred in the present case. The trial court concluded that the interaction between Hawkins and the officers was consensual and that Hawkins consented to the lifting of his shirt during that interaction. Hawkins entered a conditional guilty plea after the trial court denied his motion to suppress, and this appeal followed.
II. ANALYSIS
In reviewing a trial court’s denial of a motion to suppress, “we determine whether the accused has met his [or her] burden to show that the trial court’s ruling, when the evidence is viewed in the light most favorable to the Commonwealth, was reversible error.” Roberts v. Commonwealth, 55 Va.App. 146, 150, 684 S.E.2d 824, 826 (2009). This Court is “bound by the trial court’s findings of historical fact unless ‘plainly wrong’ or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers.” McGee v. Commonwealth, 25 Va.App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc). “However, we consider de novo whether those facts implicate the Fourth Amendment and, if so, whether the officers unlawfully infringed upon an area protected by the Fourth Amendment.” Hughes v. Commonwealth, 31 Va. App. 447, 454, 524 S.E.2d 155, 159 (2000) (en banc) (citing McGee, 25 Va.App. at 198, 487 S.E.2d at 261).
On appeal, Hawkins’s argument focuses primarily on the scope of the search in question. Hawkins contends that the police officer conducting the search exceeded the scope of Terry by lifting his shirt before he performed a weapons frisk. The trial court, however, held that Hawkins consented to the search. While the trial court explained that the officers could have performed a weapons frisk under Terry, it expressly held that a Terry stop and weapons frisk did not occur. According *107 ly, we analyze whether the trial court erred by concluding Hawkins consented to the search without addressing whether or not the officer’s actions exceeded the scope of a weapons frisk permissible under Terry.
“As a general rule, ‘a search authorized by consent is wholly valid.’ ” Kyer v. Commonwealth, 45 Va.App. 473, 483, 612 S.E.2d 213, 218 (2005) (en banc) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973)). “Where consent is freely and voluntarily given, probable cause and a search warrant are not required.” Limonja v. Commonwealth, 8 Va.App. 532, 540, 383 S.E.2d 476, 481 (1989). “The presence of consent is a factual question to be determined by the trier of fact” based on the totality of the circumstances, and we reverse a trial court’s decision regarding the presence of consent only when it is plainly wrong. Jean-Laurent v. Commonwealth, 34 Va.App. 74, 79, 538 S.E.2d 316, 318 (2000).
“ ‘Consent to a search ... must be unequivocal, specific and intelligently given ... and it is not lightly to be inferred.’ ” Id. at 78, 538 S.E.2d at 318 (quoting Elliotte v. Commonwealth, 7 Va.App. 234, 239, 372 S.E.2d 416, 419 (1988)). Consent, however, may be evidenced by conduct alone. “Courts have found consent to a specific request to search a person when evidenced by conduct alone, such as turning and ‘placing one’s hands against the wall without prompting,’ or shrugging one’s shoulders and then extending one’s arms.” Id. at 79, 538 S.E.2d at 318 (emphasis omitted) (quoting Bynum v. Commonwealth, 23 Va.App. 412, 417, 477 S.E.2d 750, 753 (1996)). Nevertheless, an appellant’s mere acquiescence to a search is inadequate to establish that he or she voluntarily consented to it, and the Commonwealth bears a heavier burden “ ‘where the alleged consent is based on an implication.’ ” Id. at 78-79, 538 S.E.2d at 318 (quoting Walls v. Commonwealth, 2 Va.App. 639, 645, 347 S.E.2d 175, 178 (1986)).
When we review the evidence of the present case under our established standard of review, we conclude that the trial *108 court did not err by denying Hawkins’s motion to suppress. The trial court’s conclusion that Hawkins consented to the search was supported by the evidence of the case and was not plainly wrong.
On appeal, Hawkins concedes that his initial interaction with the police was consensual.[4] The Norfolk officers approached Hawkins and his companion to identify them for further investigation, and they did not place them under arrest or otherwise detain them against their will. The officers testified that their tone during this interaction was “completely casual” and even joking. Although five officers were present, they were not positioned in a way that blocked Hawkins from leaving the area and they did not mention the narcotics investigation being conducted by the Chesapeake police across the street. Although the trial court noted that the officers could have conducted a Terry stop under the circumstances, the officers chose to have a less invasive, consensual encounter with Hawkins and his companion.
During the course of this encounter, Officer Mazzio noticed a bulge under Hawkins’s shirt. Rather than pat Hawkins down, Mazzio asked Hawkins if he “could do him a favor” and lift his shirt. Importantly, Mazzio asked Hawkins if he would lift his shirt; he did not order him to do so. In response to this request, Hawkins raised his arms about halfway up to his shoulders with his palms facing the officers and held them in that position for several seconds. When an officer eventually lifted Hawkins’s shirt, Hawkins did not tell him to stop or otherwise resist the search.
We conclude that Hawkins’s non-verbal response to Mazzio’s request invited the officers to lift his shirt.[5] Like an *109 appellant who places his or her hands on a wall in response to an officer’s request to perform a search, Hawkins assumed a common “frisk stance” that implied that he consented to the search. The officers reasonably inferred that Hawkins agreed to allow them to lift his shirt, and he did nothing to indicate that he objected to their actions. See Florida v. Jimeno, 500 U.S. 248, 250-51, 111 S.Ct. 1801, 1803-04, 114 L.Ed.2d 297 (1991) (“The touchstone of the Fourth Amendment is reasonableness ... [and t]he standard for measuring the scope of a suspect’s consent under the Fourth Amendment is that of ‘objective’ reasonableness — what would the typical reasonable person have understood by the exchange between the officer and the suspect?”).
The trial court’s conclusion that Hawkins consented to the search, however, was based on more than his mere physical conduct. After his arrest, Hawkins told the police that he eventually “came around and showed the officers that he ... was indeed wearing a firearm.” This statement implied that Hawkins made a conscious decision to show the police the weapon, and therefore, implied that he actually consented to the search.
In the present case, the evidence established that Hawkins voluntarily consented to Mazzio’s request to lift his shirt. During a consensual encounter, Mazzio asked Hawkins if he would lift his shirt and Hawkins responded to this request by assuming a position commonly associated with weapons frisks that implied his consent. Furthermore, the statements Hawkins made to the police officers following his arrest implied that he consented to the search. Accordingly, we conclude that the trial court did not err by determining that Hawkins *110 consented to the search and denying his motion to suppress on that basis.[6] Therefore, we affirm Hawkins’s conviction.

Affirmed.

. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

. Although the transaction occurred within the City of Norfolk, it occurred near that city’s limits, "well within three hundred yards” of the City of Chesapeake.

. This stop occurred within the City of Chesapeake.

. Although we are generally precluded from accepting concessions of law made on appeal, see Copeland v. Commonwealth, 52 Va.App. 529, 531-32, 664 S.E.2d 528, 529 (2008), we agree with Hawkins’s concession based on our independent review of the record.

. The Fourth Circuit reached a similar conclusion based on comparable conduct in United States v. Wilson, 895 F.2d 168 (4th Cir.1990). Likewise, this Court has reached similar conclusions in two unpub *109 lished opinions, Graham v. Commonwealth, No. 0281-04-3, 2005 WL 1667715, 2005 Va.App. LEXIS 287 (Va.Ct.App. July 19, 2005), and Baker v. Commonwealth, No. 1311-03-2, 2004 WL 1047495, 2004 Va.App. LEXIS 222 (Va.Ct.App. May 11, 2004). While these unpublished decisions have no precedential value, we cite them here as informative decisions pursuant to Rule 5A:1(f).

. As we conclude that the trial court did not err by deciding that Hawkins consented to the search, applying the "right result, wrong reason” principle to reach the substance of Hawkins's argument concerning the scope of the Terry frisk is inappropriate. The trial court's decision based on consent was correct, and accordingly, there is no "wrong reason” underlying it that would require us to examine alternate grounds that may support the decision.