UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Decker and O'Brien
Argued at Richmond, Virginia


JAZMINE N. KERSEY

MEMORANDUM OPINION* BY
v.        Record No. 1324-16-2         JUDGE MARLA GRAFF DECKER
                                       AUGUST 29, 2017
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Steven C. McCallum, Judge

Matthew T. Paulk (Law Office of Matthew T. Paulk, on brief), for
appellant.

David M. Uberman, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Jazmine N. Kersey appeals her conviction for possession of a controlled substance in

violation of Code § 18.2-250.  She contends that the circuit court erred by ruling that the seizure

and subsequent search of a folded dollar bill that she passed to a companion were unreasonable

under the Fourth Amendment of the United States Constitution.  We hold that the seizure of the

bill was proper based on the companion's consent.  We further hold that the unusual way the bill

was folded, combined with additional suspicious circumstances, provided probable cause to

arrest the appellant and her companion for possession of contraband.  The search of the dollar

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

bill was reasonable as one incident to arrest for that offense. Consequently, we hold that the denial of the motion to suppress was not error, and we affirm the appellant's conviction.[1]

## I. BACKGROUND[2]

On March 4, 2015, the appellant visited the Chesterfield County Police Department to file a police report. She was accompanied by a male friend named Tyson.[3] While she was there, Officer Christopher Naylor learned that a capias for her arrest was outstanding based on her failure to appear in court in a civil case. Naylor told the appellant that he had to "take her into custody" and "to jail." The appellant asked if she could make a telephone call first, and Naylor said that she could do so.

While the appellant was making the call, Naylor watched her reach into or beneath the fur coat she was wearing and pass something to Tyson. The appellant passed the item in a fashion that exposed only the back of her hand to Officer Naylor and prevented him from seeing what she was holding. Additionally, she passed the item slowly and at "chest level." Once Tyson took the object, Naylor could see that it was a "dollar bill" that was "folded on the sides [the]

---

[1] The Commonwealth argues that arresting the appellant on an outstanding capias also supported the search. See State v. Hargis, 756 S.E.2d 529, 536 (Ga. 2014) (upholding the search of the defendant's wallet, which he left in his vehicle upon his arrest); Andrews v. State, 40 P.3d 708, 714-15 (Wyo. 2002) (upholding the search of the defendant's wallet, which he tried to leave in his home upon his arrest); 3 Wayne R. LaFave, Search and Seizure § 5.5, at 283 n.1 (5th ed. 2012) (stating that "if the container was on the defendant's person at the time of arrest but he then removed it from his person and placed it nearby, the search of the container will still likely be treated as justified as part of the search of the person"). In light of our holding, we do not address this additional argument. See, e.g., Commonwealth v. White, 293 Va. ___, ___, 799 S.E.2d 494, 498 (2017).

[2] In ruling on the propriety of a circuit court's decision on a motion to suppress, the appellate court views the evidence in the light most favorable to the party who prevailed below, in this case the Commonwealth. E.g., Beasley v. Commonwealth, 60 Va. App. 381, 385 n.1, 728 S.E.2d 499, 501 n.1 (2012).

[3] Tyson's surname does not appear in the record.

long way, not just in half," and that it had additional folds. Tyson put the bill in between "some papers and binders" that he was holding. The appellant did not hand any other items to Tyson during that period of time.

Officer Naylor asked the appellant what the item was, and she replied, "[J]ust a dollar." The officer said that he "needed to see" the dollar, and then he "asked" Tyson "if" he could see it. Tyson handed the bill to Officer Naylor. Once he took it, the officer "noticed the way it was folded, specifically." Naylor believed, based on his training and experience during his four years on the police force, that the method of folding was consistent with the way that people "carry their drugs." He indicated that he had personally seen "someone carry their drugs in that fashion" on two or three prior occasions. According to Naylor, he then "open[ed]" the bill, found a white powder determined to be cocaine, and arrested the appellant and her companion for possession of a controlled substance.

Prior to trial, the appellant filed a motion to suppress the evidence. She argued that Officer Naylor's seizure and subsequent search of the dollar bill violated her Fourth Amendment rights. She contended that the way the dollar bill was folded, standing alone, did not provide probable cause to believe it contained contraband and that it was not surprising to think that she would want to give her cash to her companion rather than have it seized upon her arrest on the capias. She further argued that, absent either probable cause and exigent circumstances or a search warrant, the officer lacked legal authority to search an item that she chose to entrust to a third party at the time of her arrest.

The Commonwealth responded that the totality of the circumstances provided the officer with probable cause to believe that the appellant was concealing contraband. The prosecutor also argued that the appellant "divested [herself] of her interest" in the dollar bill when she gave it to her friend and that the friend then made the decision to hand the item to the officer.

The circuit court denied the motion to suppress, providing a two-part rationale for doing so. First, it ruled that Tyson consented to the seizure of the dollar bill, recognizing that the record supported a finding that Officer Naylor "asked the man if he could see it" and "the man handed it over to the officer without resistance or objection." Second, the court ruled that the officer had probable cause to "search" the dollar. It based this ruling on the method of folding of the dollar, the officer's knowledge of the significance of that folding, the surreptitious way that the appellant passed the bill to Tyson, and the manner in which Tyson concealed the bill among the items he was already holding. The court described the way that the appellant held the bill while slowly passing it as "essentially ke[eping] her finger[s] straight, but with her thumb clasped against the palm [that] was holding this dollar bill." The court found it "very clear" that the appellant, who was in custody at the time, had engaged in "an effort to conceal what she had." Further, it pointed out that "under these circumstances," no exigency was required.

After the court denied the appellant's motion to suppress, she entered a conditional guilty plea to the charge of possession of a controlled substance. After conviction, she was sentenced to serve ten years in prison, with nine years nine months suspended.

## II. ANALYSIS

The appellant argues that the circuit court erred in denying her motion to suppress the cocaine found in the folded dollar bill. She contends that she had a reasonable expectation of privacy in the bill, which she did not forfeit by entrusting it to her friend, and that neither she nor her friend consented to Officer Naylor's seizure and subsequent search of the bill. She also suggests that at the time of the search, the officer did not have probable cause to believe that the bill contained evidence of a crime and that, even if he did, he lacked the exigent circumstances necessary to search it without a warrant. The Commonwealth responds that the appellant relinquished her expectation of privacy in the bill by passing it to her friend and, accordingly,

- 4 -

that she lacked standing to contest the seizure and search. The Commonwealth also argues, as the circuit court ruled, that the officer developed probable cause to believe that the appellant and her companion were engaged in a felony, providing the officer with probable cause to arrest them and to search the bill incident to arrest.

## A. Standard of Review

When challenging the denial of a motion to suppress evidence, the appellant bears the burden of establishing that reversible error occurred. Glenn v. Commonwealth, 275 Va. 123, 130, 654 S.E.2d 910, 913 (2008). On appeal, the Court considers the evidence in the light most favorable to the party who prevailed below and affords to that party, in this case the Commonwealth, the benefit of all inferences fairly deducible from that evidence. Mason v. Commonwealth, 291 Va. 362, 367, 786 S.E.2d 148, 151 (2016).

The appellate court is bound by the circuit court's "findings of historical fact unless 'plainly wrong' or without evidence to support them." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*). "This standard requires us 'to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.'" Commonwealth v. White, 293 Va. ___, ___, 799 S.E.2d 494, 495 (2017) (quoting Evans v. Commonwealth, 290 Va. 277, 280, 776 S.E.2d 760, 761 (2015)). The factual findings to which we defer include the circuit court's assessment of the credibility of the witnesses. McCary v. Commonwealth, 36 Va. App. 27, 35, 548 S.E.2d 239, 243 (2001). They also include whether the police received consent for a seizure or search. Jean-Laurent v. Commonwealth, 34 Va. App. 74, 79, 538 S.E.2d 316, 318 (2000). However, the appellate court reviews *de novo* both the issue of whether law enforcement had probable cause for a seizure or search and the overarching issue of whether the actions were reasonable. Glenn, 275 Va. at 130, 654 S.E.2d at 913; Bland v. Commonwealth, 66 Va. App. 405, 412, 785 S.E.2d 798, 801 (2016).

B.  Expectation of Privacy in the Dollar Bill

The "touchstone" of Fourth Amendment analysis is "whether a person has a 'constitutionally protected reasonable expectation of privacy'" in the place or item seized or searched.  Oliver v. United States, 466 U.S. 170, 177 (1984) (quoting Katz v. United States, 389 U.S. 347, 360 (1967) (Harlan, J., concurring)), quoted with approval in Sanders v. Commonwealth, 64 Va. App. 734, 743, 772 S.E.2d 15, 19 (2015); see Minnesota v. Carter, 525 U.S. 83, 88 (1998) (recognizing this as a question of "substantive Fourth Amendment law [rather] than . . . standing" (quoting Rakas v. Illinois, 439 U.S. 128, 140 (1978))).  The defendant bears the burden of proving such an expectation of privacy if she wishes to challenge the constitutionality of the action.  See, e.g., Bell v. Commonwealth, 264 Va. 172, 190, 563 S.E.2d 695, 708 (2002); Logan v. Commonwealth, 47 Va. App. 168, 171 n.2, 622 S.E.2d 771, 772 n.2 (2005) (en banc).  This burden involves both subjective and objective components.  Sanders, 64 Va. App. at 744, 772 S.E.2d at 19-20.  Additionally, the burden is one of "persuasion," not one of "mere . . . production."  Logan, 47 Va. App. at 171 n.2, 622 S.E.2d at 772 n.2.  Consequently, it requires proof, "to the satisfaction of the factfinder," of the existence of facts upon which the necessary "legal conclusion can be drawn."  Id.

To meet the first component, a defendant must show "that [she] personally ha[d] an expectation of privacy in the [thing] searched."  Rideout v. Commonwealth, 62 Va. App. 779, 786, 753 S.E.2d 595, 599 (2014) (quoting Carter, 525 U.S. at 88).  In evaluating this prong of the test, the Court must determine "whether the individual, by [her] conduct has 'exhibited an actual (subjective) expectation of privacy,' [i.e.,] whether . . . the individual has shown that '[she] seeks to preserve [the thing] as private.'"  Id. at 787, 753 S.E.2d at 599 (citation omitted) (quoting Smith v. Maryland, 442 U.S. 735, 740 (1979)).  This subjective determination is a finding of fact

entitled to deference on appeal.  Johnson v. Commonwealth, 26 Va. App. 674, 684, 496 S.E.2d 143, 148 (1998).

Here, the circuit court, in ruling on the motion to suppress on probable cause grounds, made express factual findings relevant to whether the appellant exhibited a subjective expectation of privacy in the dollar bill and its contents.  The judge found that the appellant, who was in custody on an outstanding capias and knew she was in custody, "reach[ed] into a pocket" and "remov[ed] something in a concealed way."  He further noted that she engaged in an "atypical[ly] . . . slow maneuver" to pass the item to her companion.  The court described the way that the appellant held the item while passing it as "essentially ke[eping] her finger[s] straight, but with her thumb clasped against the palm [of her hand that] was holding th[e item]."  The judge further described the appellant's method of passing the item as "surreptitious."  Additional evidence supports this finding.  It shows that as a result of the surreptitious manner in which the appellant passed the item, the officer was unable to see it.  Not until Tyson took possession of the item could the officer see that it was a folded dollar bill, and Tyson quickly slipped it between some papers he was holding, again obscuring it from view.  Finally, when the officer asked the appellant about the item, she attempted to minimize the likelihood that the officer would take any further interest in it by replying that it was "just a dollar."  Based on all the circumstances, the circuit court found that the evidence was "very clear" that the appellant engaged in a focused "effort to conceal what she had."  See Hardy v. Commonwealth, 17 Va. App. 677, 680-81, 440 S.E.2d 434, 436-37 (1994) (holding that the defendant displayed a subjective intent to "retain his privacy interest" in the trunk of a borrowed vehicle by objecting to its search and directing his girlfriend not to give the keys to the police).  On this record, the court's finding that the appellant attempted to "conceal" the bill and its contents is not plainly

wrong. Consequently, the record supports the conclusion that the appellant maintained a subjective expectation of privacy in the contents of the bill.

Second, to meet the objective component of the expectation-of-privacy test, a defendant must establish that her expectation "[was] objectively 'reasonable' based on 'a source outside of the Fourth Amendment.'" Sanders, 64 Va. App. at 744, 772 S.E.2d at 20 (quoting Rideout, 62 Va. App. at 786, 753 S.E.2d at 599). The defendant may prove such an expectation by means of "either: (1) '"concepts of real or personal property law"' or (2) '"understandings that are recognized and permitted by society."'" Id. (quoting United States v. Jones, 565 U.S. 400, 408 (2012)). "[This] guarantee protects alike the 'traveler who carries a toothbrush and a few articles of clothing in a paper bag' and 'the sophisticated executive with [a] locked attaché case.'" Smith v. Ohio, 494 U.S. 541, 542 (1990) (per curiam) (quoting United States v. Ross, 456 U.S. 798, 822 (1982)). In determining whether an expectation of privacy is objectively reasonable, a court looks to the totality of the circumstances. Atkins v. Commonwealth, 57 Va. App. 2, 13, 698 S.E.2d 249, 254 (2010). Those circumstances include whether the defendant had "a possessory interest" in the item seized, whether she had "the right to exclude others," whether she "exhibited a subjective expectation that it would remain free from governmental invasion," and whether she "took normal precautions to maintain [her] privacy." United States v. Haydel, 649 F.2d 1152, 1155 (5th Cir. 1981), quoted with approval in McCoy v. Commonwealth, 2 Va. App. 309, 312, 343 S.E.2d 383, 385 (1986). Whether the defendant had an objectively reasonable expectation of privacy "based on a property interest or other societal norm . . . is a legal determination that we review de novo." Sanders, 64 Va. App. at 744, 772 S.E.2d at 20.

Here, the appellant's expectation of privacy in the contents of the folded dollar bill was based on her personal property interest. See, e.g., Jones, 565 U.S. at 406-08. The bill originated in her possession, first coming to the officer's attention when she removed it from her clothing

- 8 -

and passed it to her friend. Even after the officer searched the bill and found contraband inside it, the appellant maintained that the bill and its contents belonged to her. See Atkins, 57 Va. App. at 13-14, 698 S.E.2d at 254-55 (discussing the impact of the assertion or denial of a property interest).

The fact that the folded dollar bill was a non-traditional container did not render an expectation of privacy in the bill objectively unreasonable. See Grandison v. Commonwealth, 274 Va. 316, 320-21, 645 S.E.2d 298, 300-01 (2007) (implicitly concluding that the defendant had a reasonable expectation of privacy in the contents of a folded dollar bill by holding that his possession of the bill, which was a "legal [item] with a legitimate purpose," in a high crime area was not enough to provide probable cause to search inside the bill); see also Smith, 494 U.S. at 541-42 (reasonable expectation of privacy in a paper bag); People v. Dumas, 955 P.2d 60, 64 (Colo. 1998) (*en banc*) (citing drugs "concealed in a folded dollar bill" as an example of how contraband can be hidden "'in small containers'" (quoting People v. Moore, 900 P.2d 66, 71 (Colo. 1995); and citing People v. Chaves, 855 P.2d 852, 853 (Colo. 1993))); State v. Dubose, 843 N.E.2d 1222, 1230-31 (Ohio Ct. App. 2005) (reasonable expectation of privacy in "Scotchguard can" entrusted to another). See generally 4 Wayne R. LaFave, Search and Seizure § 8.6(a) (5th ed. 2012) (recognizing that the character of a container and whether it is locked or secured in some other fashion *can* be relevant to whether a bailee may consent to its search).

Additionally, the appellant did not forfeit her objectively reasonable expectation of privacy in the item "simply by entrusting [it] to the care of another." 6 LaFave, supra, § 11.3(f), at 285-86 (quoting United States v. Most, 876 F.2d 191, 197 (D.C. Cir. 1989) (involving an entrustment to "store clerks")); see Hardy, 17 Va. App. at 680-82, 440 S.E.2d at 436-37 (recognizing that both the owner of a car and its bailee had a sufficient reasonable expectation of privacy in it to challenge its search); cf. Knight v. Commonwealth, 61 Va. App. 297, 309 n.5,

734 S.E.2d 716, 722 n.5 (2012) (noting in *dicta* that an owner generally retains a reasonable expectation of privacy even in lost property, subject to the finder's examination of it to identify its owner). The evidence was uncontradicted that even after the officer searched the bill, the appellant maintained that the bill and its contents were hers and that "her friend . . . had nothing to do with" the items. The appellant did have a diminished expectation of privacy in the bill and its contents to the extent that she risked that her friend would consent to a search of the property or abandon it. See Glenn, 275 Va. at 132-33, 654 S.E.2d at 914-15 (recognizing third-party consent); see also United States v. Basinski, 226 F.3d 829, 838 (7th Cir. 2000) (recognizing third-party abandonment). Nevertheless, this risk did not constitute a diminished expectation of privacy as against direct "intrusion" by "[the] government[]," and under the facts here, it did not deprive the appellant of "standing" to contest the officer's search. See John L. Costello, Virginia Criminal Law and Procedure § 40.2 (4th ed. 2008) (emphasis omitted) (relying in part on Rawlings v. Kentucky, 448 U.S. 98 (1980), and Mancusi v. DeForte, 392 U.S. 364 (1968)); see also 6 LaFave, supra, at 285.

Consequently, the record supports the circuit court's implicit determination that the appellant had a subjective expectation of privacy in the folded dollar bill. It also supports our *de novo* ruling that this expectation of privacy was one that society was prepared to recognize as objectively reasonable.

### C. Examination of the Dollar Bill

The circuit court found that the appellant's friend consented to the officer's seizure of the dollar bill. The evidence, viewed under the proper standard, supports that finding.

Generally speaking, a search or seizure "authorized by consent is wholly valid." Kyer v. Commonwealth, 45 Va. App. 473, 483, 612 S.E.2d 213, 218 (2005) (*en banc*) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973)); see United States v. McFarley, 991 F.2d

1188, 1191 (4th Cir. 1993). Consent to search an item of personal property may be obtained from either the owner of the property or "a third party who shares access to the . . . object being searched." Glenn, 275 Va. at 130, 654 S.E.2d 913. Additionally, a nonverbal response to a specific request may constitute consent. See Hawkins v. Commonwealth, 65 Va. App. 101, 108-09, 774 S.E.2d 492, 496 (2015). However, "mere acquiescence is not enough." Jean-Laurent, 34 Va. App. at 78, 538 S.E.2d at 318. The presence of consent is a factual question to be determined by the trier of fact based on the totality of the circumstances, and such a finding may be reversed only if it is plainly wrong. Hawkins, 65 Va. App. at 107, 774 S.E.2d at 495.

Here, the appellant passed the folded dollar bill to Tyson, who placed it among some papers he was holding. Officer Naylor asked the appellant what the item was, and she responded that it was "just a dollar." Naylor told the appellant that he "needed to see" the bill, language tending to indicate an order rather than a request. See, e.g., Jean-Laurent, 34 Va. App. at 79-80, 538 S.E.2d at 318-19. However, the officer then "*asked*" Tyson, who possessed the bill, "*if* [he] could see" it. (Emphases added). The appellant did not object to what was clearly a request made by the officer to Tyson. See Glenn, 275 Va. at 133-34, 654 S.E.2d at 915; see also White, 293 Va. at ___, 799 S.E.2d at 498 ("Either of two joint possessors [of a plastic bag], absent the express objection of one of them, may consent to a search under Georgia v. Randolph, 547 U.S. 103, 109 (2006)."). Then Tyson, who had authority over the bill by virtue of the fact that the appellant had just given him exclusive physical possession of it, consented to Naylor's request to "see" the bill by handing it to the officer in the appellant's presence. See, e.g., Glenn, 275 Va. at 130, 654 S.E.2d at 913; see also United States v. Sellers, 667 F.2d 1123, 1126 (4th Cir. 1981) (holding that where a defendant asked friends to store his belongings, the friends could consent to a search of the items, which were "openly exposed" and "not[] locked"). This record supports

- 11 -

the circuit court's factual finding that Tyson's act of handing the dollar bill to Officer Naylor was more than acquiescence and amounted to consent to the officer's explicit request to seize the bill in order to "see" it. This resolves the question of the lawfulness of the seizure of the bill.

Officer Naylor, however, did not ask for consent to *search* the bill. He asked merely to *see* it. Additionally, the circuit court, which resolved the issue of the reasonableness of the search by holding that it was supported by probable cause, did not find that Tyson's consent permitted the officer to open the folded bill. See Knight, 61 Va. App. at 309, 734 S.E.2d at 722 (holding that an appellate court "will not apply the 'right result, wrong reason' doctrine 'where . . . further factual resolution is needed'" (quoting Harris v. Commonwealth, 39 Va. App. 670, 676, 576 S.E.2d 228, 231 (2003 (*en banc*)))). Assuming without deciding that Tyson did not consent to a search of the bill, this does not end the inquiry. We hold that the circuit court's ruling that Officer Naylor had probable cause at the time of the search to believe the dollar bill contained drugs rendered the search lawful. The existence of probable cause gave Officer Naylor authority to arrest the appellant and Tyson for possession of drugs, and as a result, he also had authority to search them and any containers within their reach pursuant to that arrest.

Probable cause exists when the facts and circumstances known to the officer "are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed." Al-Karrien v. Commonwealth, 38 Va. App. 35, 47, 561 S.E.2d 747, 753 (2002) (quoting Taylor v. Commonwealth, 222 Va. 816, 820, 284 S.E.2d 833, 836 (1981)). In conducting this assessment, "courts will focus [on] 'what the totality of the circumstances meant to police officer[s] trained in analyzing the observed conduct for purposes of crime control." Id. (quoting Taylor, 222 Va. at 820-21, 284 S.E.2d at 836). "At the heart of all the definitions of probable cause is a reasonable ground for belief of guilt 'particularized with respect to the person [or thing] to be [searched].'" Doscoli v. Commonwealth, 66 Va. App. 419, 427, 786 S.E.2d 472,

477 (2016) (quoting Maryland v. Pringle, 540 U.S. 366, 371 (2003)). "Finely tuned standards" like proof beyond a reasonable doubt or by a preponderance, although "useful in formal trials, have no place in the [probable-cause] analysis." Id. (alteration in original) (quoting Pringle, 540 U.S. at 371).

The appellant correctly asserts that under Supreme Court of Virginia precedent, the method of folding of a dollar bill multiple times in "apothecary style" or some other atypical way, combined with a defendant's presence in a high crime area and the knowledge of the investigating officer that people sometimes carry drugs in such a fashion, is insufficient to provide probable cause to believe the bill contains drugs. Grandison, 274 Va. at 318, 320-21, 645 S.E.2d at 299-301; see Snell v. Commonwealth, 275 Va. 472, 472-73, 659 S.E.2d 510, 510-11 (2008) (applying Grandison). In the appellant's case, however, the evidence proved additional suspicious circumstances that, taken together with the folded bill, support the circuit court's conclusion that Officer Naylor had probable cause to arrest the appellant and Tyson, thereby permitting a search of the bill incident to arrest.[4]

Officer Naylor first became suspicious when the appellant, who knew she was being arrested on a capias and taken to jail, surreptitiously passed to her friend an item that the officer could not see. The appellant kept her fingers extended with the back of her hand facing Naylor and held only her thumb to her palm. Additionally, she moved her hand slowly and at chest height, ostensibly while making a telephone call, all of which Naylor viewed as unusual and

---

[4] Independent constitutional authority to *search* the dollar bill required not only probable cause but also exigent circumstances or a search warrant. See, e.g., Royal v. Commonwealth, 37 Va. App. 360, 365, 558 S.E.2d 549, 551 (2002). The officer did not have a search warrant, and the trial court did not find that exigent circumstances were present. However, consistent with the circuit court's ruling, probable cause to believe the dollar bill contained drugs also provided probable cause to *arrest* the appellant and Tyson. Probable cause to arrest in turn legitimized the search of the dollar bill incident to their arrest without proof of exigent circumstances. See, e.g., Buhrman v. Commonwealth, 275 Va. 501, 505, 659 S.E.2d 325, 327 (2008).

- 13 -

suspicious.  See, e.g., Kidd v. Commonwealth, 38 Va. App. 433, 443-44, 565 S.E.2d 337, 342 (2002) (noting that a series of hand-to-hand transactions in which an officer cannot see what is exchanged may provide reasonable suspicion for detention and investigation).

Further, once Tyson obtained possession of the item, Officer Naylor was briefly able to see that it was an atypically folded "dollar bill."  Tyson then immediately took steps to conceal the bill again by placing it in the middle of a group of papers and files he was holding.  Finally, the appellant, who was wearing a fur coat, did not give the coat or any of her other possessions to Tyson during this period of time, belying the notion that her intention was to give him her valuables for safekeeping.

This furtive behavior on the part of both the appellant and Tyson, at a time when the appellant knew she was going to jail, combined with Officer Naylor's further examination of the bill with Tyson's consent, provided the officer with probable cause, based on his training and experience involving contraband carried in currency, to believe that the two were knowingly concealing drugs inside the bill.  See In re J.D.R., 637 A.2d 849, 850-51 (D.C. 1994) (holding probable cause to arrest existed where a police officer saw the corner of a plastic ziplock bag, which the officer knew was a type of bag commonly used as a container for drugs, protruding from the defendant's cast and the defendant tried to hide the bag), cited with approval in Ross v. Commonwealth, 35 Va. App. 103, 108, 542 S.E.2d 819, 821 (2001); People v. McRay, 416 N.E.2d 1015, 1018-20 (N.Y. 1980) (recognizing that a glassine envelope is a "'telltale sign of heroin'" and that passing one in a "furtive or evasive" manner provides probable cause to arrest (quoting People v. Alexander, 333 N.E.2d 157, 158 (N.Y. 1975))), cited with approval in Ross, 35 Va. App. at 108, 542 S.E.2d at 821; see also DePriest v. Commonwealth, 4 Va. App. 577, 585, 359 S.E.2d 540, 544 (1987) (holding that an officer's observation of hand-to-hand transactions provided reasonable suspicion but not probable cause to arrest because the officer

"did not observe . . . the exchange of any object which in his experience suggested narcotics" and none of the "transactions observed were furtive in nature").

Based on the existence of probable cause to arrest the appellant and Tyson, it was entirely lawful for Officer Naylor to search them incident to arrest. See, e.g., Buhrman v. Commonwealth, 275 Va. 501, 505, 659 S.E.2d 325, 327 (2008). As long as probable cause exists to arrest a subject, the fact that the subject is searched before the formal arrest does not violate the Fourth Amendment if "the formal arrest follow[s] quickly on the heels of the challenged search," as it did in this case. See Rawlings, 448 U.S. at 111, cited with approval in Wright v. Commonwealth, 222 Va. 188, 193, 278 S.E.2d 849, 852-53 (1981). Furthermore, the scope of a search incident to arrest includes not only the arrestee's "person" but also "the area 'within his [or her] immediate control,'" meaning "the area from within which [the arrestee] might gain possession of a weapon or destructible evidence." Chimel v. California, 395 U.S. 752, 763 (1969); see Commonwealth v. Gilmore, 27 Va. App. 320, 327-28, 498 S.E.2d 464, 468 (1998). The permissible scope also includes containers found on the arrestee's person or within his or her immediate control as long as the search occurs sufficiently contemporaneously. See Michigan v. Summers, 452 U.S. 692, 693, 705 (1981) (envelope); United States v. Robinson, 414 U.S. 218, 234-36 (1973) (package of cigarettes).

In this case, these principles supported Officer Naylor's search of the suspiciously folded and furtively handled dollar bill. Consequently, the evidence, viewed under the proper standard, supports the circuit court's stated findings and rationale for denying the appellant's motion to suppress.

### III. CONCLUSION

Tyson's act of handing the dollar bill to Officer Naylor constituted consent to the officer's request to "see" the bill. The officer's observations of the appellant and her companion

as they surreptitiously passed and hid the dollar bill, combined with the officer's knowledge about the possible significance of the atypical way the bill was folded, provided probable cause for an arrest of the appellant and her companion. Therefore, the Fourth Amendment permitted a search of the folded dollar bill incident to those arrests. The circuit court did not err in denying the motion to suppress, and we affirm the appellant's conviction.

<u>Affirmed.</u>

Humphreys, J., concurring in the judgment.

The doctrine of judicial restraint requires that we decide cases "on the best and narrowest grounds available." Air Courier Conference v. Am. Postal Workers Union, 498 U.S. 517, 531 (1991) (Stevens, J., concurring)). As our Supreme Court noted in Commonwealth v. Swann, 290 Va. 194, 196-97, 776 S.E.2d 265, 267 (2015), a fundamental and longstanding corollary to this doctrine is that "unnecessary adjudication of a constitutional issue" should be avoided. Bell v. Commonwealth, 264 Va. 172, 203, 563 S.E.2d 695, 715 (2002); see also Christopher v. Harbury, 536 U.S. 403, 417 (2002) (noting the "obligation of the Judicial Branch to avoid deciding constitutional issues needlessly").

While I find no fault with the Fourth Amendment analysis of the majority, I see no need to engage in it because the record in this case clearly reflects that appellant failed in her burden to establish that her Fourth Amendment rights were implicated by the seizure of the dollar bill from Tyson.

As the majority correctly notes, the protections of the Fourth Amendment are not vicarious and extend only to prevent governmental intrusion into an individual's property interest or objectively reasonable expectation of privacy in the place searched or the item seized. United States v. Jones, 565 U.S. 400, 408 (2012). On the record before us, the appellant has not demonstrated that either is the case.

As the majority notes, the appellant had no property interest in the dollar bill at the time of the seizure sufficient to implicate the holding in Jones because she had previously transferred it to Tyson and had objectively abandoned any property interest in it. Similarly, despite appellant's in-court assertion of a property interest in the dollar bill, she stated no interest in it after she gave the bill to Tyson and failed to object or otherwise declare any such interest at the time Tyson gave the bill to Officer Naylor.

- 17 -

Furthermore, an application of the <u>Katz v. United States</u>, 389 U.S. 347 (1967), "reasonable expectation of privacy test," also retained and incorporated into the Supreme Court's holding in <u>Jones,</u> does not yield a different result. Granting, as the majority does, that appellant had a subjective expectation of privacy in the item seized by Officer Naylor from Tyson, that expectation of privacy was not *objectively* reasonable.

The majority opinion correctly states the test for determining whether a subjective expectation of privacy is objectively reasonable and includes whether, based upon the totality of the circumstances, a defendant had a possessory interest in the place searched or item seized or whether "society [is] willing to recognize that [subjective] expectation as reasonable." <u>California v. Ciraolo</u>, 476 U.S. 207, 211 (1986). The existence of these factors is, of course, measured at the time of the search or seizure.

Here, at the time Officer Naylor asked for and received the dollar bill from Tyson, the appellant clearly had no possessory interest in the bill. Moreover, it is important to note that the item in question is one dollar in United States currency. In other words, the item "seized" in this case is a fungible unit of legal tender that is routinely exchanged millions of times daily for goods, services, payment of debts, and even gifted between people on a routine basis. It seems to me axiomatic that once transferred from the possession of one person to another, currency— whether in the form of paper or coins—are not items that the public would generally consider to carry any objective expectation of privacy.

Because I conclude that appellant failed in her burden to establish that her Fourth Amendment rights were in any way implicated when appellant transferred the dollar bill, folded around a quantity of cocaine, to Tyson who then transferred the bill to Officer Naylor, I see no need to address the constitutionality of the seizure and I would affirm on that narrower basis.