COURT OF APPEALS OF VIRGINIA

Present:   Judges Huff, O'Brien and Athey
Argued at Norfolk, Virginia

UNPUBLISHED

ISADORE MIRACLE HUMPHREY, II

v.      Record No. 1301-23-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE GLEN A. HUFF
JULY 2, 2024

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
James C. Lewis, Judge

Roger A. Whitus (Slipow & Robusto P.C., on brief), for appellant.

Lauren C. Campbell, Assistant Attorney General (Jason S. Miyares, Attorney General, on brief), for appellee.

Isadore Miracle Humphrey, II ("appellant"), entered conditional guilty pleas in the Circuit Court of the City of Virginia Beach (the "trial court") to possession of a firearm by a violent felon and carrying a concealed weapon. On appeal, he assigns error to the trial court's denial of his motion to suppress. Finding no error, this Court affirms appellant's convictions.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413.

BACKGROUND[1]

On March 7, 2022, Virginia Beach Police Sergeant Roys was conducting a foot patrol along the Virginia Beach oceanfront.[2] At approximately 8:00 p.m., Sergeant Roys saw appellant walking with another man who had an outline of a firearm visible through his clothing. Sergeant Roys approached the man and asked if he had a concealed weapon permit. The man denied having a firearm. Sergeant Roys and Officer Walker detained the man and, after a brief struggle, removed a gun from his pants.

During this time, appellant began moving away from the officers. Officer Walker asked appellant if he also possessed a firearm, to which appellant responded, "nah, I'm good." Officer Walker then asked for appellant's permission to conduct a pat-down search for weapons. Appellant repeated his initial response and continued moving away from Officer Walker. As appellant backed away, he tripped over a small sign and Officer Walker saw an "angular shape[d]" item on appellant's left side, which Officer Walker believed to be a firearm. Officer Walker explained that, as a police officer, he had been involved in "hundreds of firearms arrests" and also had extensive "training from the military and all three police departments [at which he had worked during his police career] with firearms." Upon seeing what he believed to be the imprint of a firearm on appellant's person, Officer Walker ordered appellant to stop. When appellant continued to move away, Officer Walker handcuffed appellant and removed a gun from his waistband.

---

[1] "In accordance with familiar principles of appellate review," this Court recites the facts "in the light most favorable to the Commonwealth, the prevailing party" in the trial court. *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). In doing so, this Court "discard[s] the evidence of the accused in conflict with that of the Commonwealth, and regard[s] as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Commonwealth v. Cady*, 300 Va. 325, 329 (2021) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

[2] According to Sergeant Roys, the Virginia Beach police were "doing firearms interdiction and essentially deterrence down at the oceanfront" due to a recent increase in gun violence in that area.

At the subsequent suppression hearing, appellant argued that he was seized in violation of his Fourth Amendment rights because Officer Walker lacked a reasonable suspicion of criminal activity. While the Commonwealth asserted that appellant was not seized until *after* Officer Walker saw the outline of the gun and ordered appellant to stop, appellant argued that he was seized *before* that point. The trial court denied the motion to suppress, and appellant entered conditional guilty pleas to possession of a firearm by a violent felon in violation of Code § 18.2-308.2 and carrying a concealed weapon in violation of Code § 18.2-308.

This appeal followed.

## STANDARD OF REVIEW

On "appellate review of a trial court's decision on a motion to suppress[,] . . . [t]he appellant bears the burden of establishing that reversible error occurred." *Williams v. Commonwealth*, 71 Va. App. 462, 474 (2020). A "claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review *de novo*.'" *Cole v. Commonwealth*, 294 Va. 342, 354 (2017) (quoting *Cost v. Commonwealth*, 275 Va. 246, 250 (2008)). In doing so, this Court "must give deference to the factual findings of the circuit court and give due weight to the inferences drawn from those factual findings." *Moore v. Commonwealth*, 69 Va. App. 30, 36 (2018) (quoting *Commonwealth v. Robertson*, 275 Va. 559, 563 (2008)). This Court must also, however, "determine independently whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment." *Id.* (quoting *Robertson*, 275 Va. at 563).

## ANALYSIS

Appellant argues on appeal that the trial court should have suppressed the evidence—namely, the firearm—that was obtained due to an unlawful search and seizure. He contends that the officers seized him before developing the reasonable suspicion required to detain him

pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968). For the following reasons, this Court disagrees and finds that appellant's seizure was not made in violation of the Fourth Amendment.

"Fourth Amendment jurisprudence recognizes three categories of police-citizen [contacts]: (1) consensual encounters[;] (2) brief, minimally intrusive investigatory detentions based upon specific, articulable facts, commonly referred to as *Terry* stops[;] and (3) highly intrusive arrests and searches founded on probable cause." *Middlebrooks v. Commonwealth*, 52 Va. App. 469, 476 (2008) (first alteration in original) (quoting *Blevins v. Commonwealth*, 40 Va. App. 412, 420-21 (2003), *aff'd*, 267 Va. 291 (2004)).

"Under the Fourth Amendment, any seizure of a person, no matter how brief, must have an objective justification related to law enforcement." *Montague v. Commonwealth*, 278 Va. 532, 538 (2009). Where, however, "'a reasonable person would feel free "to disregard the police and go about his business," the encounter is consensual' and no reasonable suspicion is required to justify the encounter."[3] *Jones v. Commonwealth*, 279 Va. 521, 528 (2010) (quoting *Dickerson v. Commonwealth*, 266 Va. 14, 17 (2003)).[4] Thus, "a voluntary encounter between the police and a citizen does not constitute a seizure prohibited by the Fourth Amendment." *Montague*, 278 Va. at 538. Nevertheless, even in a nonconsensual encounter, a person is not seized under the Fourth Amendment unless he (i) is under some form of physical restraint by the police, or (ii) has complied with a police officer's directive/show of authority. *See Woodson v. Commonwealth*, 245 Va. 401, 405 (1993) (finding no Fourth Amendment seizure when

---

[3] "The 'reasonable person' test is an objective test and presumes an innocent person." *Jones*, 279 Va. at 528.

[4] "As long as the police do not convey, by word or deed, that compliance with their request is mandatory, there is no requirement that these encounters be based on an objective or particularized suspicion regarding the person approached." *Montague*, 278 Va. at 538. "Thus, even when the police do not have a reasonable suspicion that an individual may be engaged in criminal activity, they may approach that person and request information regarding the person's identity without violating the Fourth Amendment." *Id.*

defendant failed to comply with order to show his hands); *Thomas v. Commonwealth*, 24 Va. App. 49, 54 (1997) (en banc).

In this case, appellant's encounter with the police began consensually. Sergeant Roys and Officer Walker approached appellant and his companion as they walked down the sidewalk. After seeing the outline of a gun on appellant's companion, Sergeant Roys confronted him and retrieved a firearm from his pants after a brief struggle. Meanwhile, appellant began backing away, demonstrating his belief that he was free to leave and not subject to the officers' authority. The consensual nature of appellant's encounter with the police was not changed when Officer Walker asked if appellant also had a gun. Appellant's response in the negative was voluntary, and he continued to back away from Officer Walker. *See Montague*, 278 Va. at 539 ("If the person to whom the police questions are directed objectively 'remains free to disregard the questions and walk away,' there is no demonstrable restriction on the person's liberty and the encounter does not result in a seizure." (quoting *United States v. Mendenhall*, 446 U.S. 544, 553-54 (1980))).

Only after appellant tripped over a sign, revealing the outline of a firearm on his person, did Officer Walker seize appellant by handcuffing him. At that point, the encounter was no longer consensual and instead represented an investigatory detention justified by Officer Walker's reasonable suspicion that appellant possessed a concealed weapon. "There are no bright line rules to follow when determining whether a reasonable and articulable suspicion exists to justify an investigatory stop. Instead, the courts must consider the totality of the circumstances—the whole picture." *Hawkins v. Commonwealth*, 65 Va. App. 101, 112 (2015) (quoting *Reel v. Commonwealth*, 31 Va. App. 262, 266 (2000)). "A reasonable suspicion is more than an 'unparticularized suspicion or "hunch[,]"'" *Bass v. Commonwealth*, 259 Va. 470, 475 (2000) (quoting *Terry*, 392 U.S. at 27), but "less than probable cause[,]" *Jackson v. Commonwealth*, 267 Va. 666, 673 (2004). Within this range, "[a] police officer may detain a person 'if the officer

possesses a reasonable suspicion, based on articulable facts, that the individual is or is about to be engaged in criminal activity.'" *Hawkins*, 65 Va. App. at 112 (quoting *Gregory v. Commonwealth*, 22 Va. App. 100, 105 (1996)).

Moreover, an officer is "entitled 'to view the circumstances confronting him in light of his training and experience, and he may consider any suspicious conduct of the suspected person.'" *Andrews v. Commonwealth*, 37 Va. App. 479, 491 (2002) (quoting *James v. Commonwealth*, 22 Va. App. 740, 745 (1996) (citation omitted)); *see also Freeman v. Commonwealth*, 20 Va. App. 658, 661 (1995) (recognizing that a "trained law enforcement officer may [be able to] identify criminal behavior which would appear innocent to an untrained observer" (alteration in original) (quoting *Taylor v. Commonwealth*, 6 Va. App. 384, 388 (1988) (en banc))). Accordingly, "[w]hether officers making an investigatory stop are presented with circumstances sufficiently suspicious to satisfy [the] minimum standard is determined by examining the totality of the circumstances in the context of the officer's experience and training." *Rudolph v. Commonwealth*, 277 Va. 209, 213 (2009). Here, the circumstances articulated by the officers, viewed in their totality and under the appropriate legal standard, justify a finding of reasonable suspicion.

Although appellant suggests the existence of other noncriminal explanations that would rationally explain his observed behavior, the law is clear that a determination of reasonable suspicion "need not rule out the possibility of innocent conduct." *United States v. Arvizu*, 534 U.S. 266, 277 (2002). Instead, the standard "requires only 'a moderate chance of finding evidence of wrongdoing.'" *Shifflett v. Commonwealth*, 58 Va. App. 732, 736 (2011) (quoting *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 371 (2009)). Accordingly, "[t]he possibility of an innocent explanation for the suspicious conduct does not necessarily forbid an

officer from making a brief, investigatory stop." *Raab v. Commonwealth*, 50 Va. App. 577, 581 (2007) (en banc).[5]

Therefore, appellant's argument that his conduct could be traced to legitimate or innocent explanations is unpersuasive. Even though each of appellant's acts, standing alone, might be susceptible to an innocent explanation, the totality of the circumstances provided the officers with a reasonable suspicion that he possessed a firearm. They saw appellant walking in an area of recently increased gun-related violence with a companion who was carrying a concealed firearm. When his companion refused to cooperate with the officers' investigation, appellant tried to distance himself from the ensuing scuffle. During his evasive maneuvers, appellant stumbled and revealed to Officer Walker what looked like the outline of a gun on his body.

Those facts lead this Court to conclude that the officers possessed reasonable suspicion to not only detain appellant but also conduct a pat down of his person and retrieve the firearm concealed in his pants.[6] When an officer with reasonable suspicion justifying a *Terry* stop believes that the person "may be armed and dangerous," the officer may lawfully conduct a pat-down search for weapons in order to ensure his own safety and the safety of others nearby. *Lowe v. Commonwealth*, 33 Va. App. 656, 660-61 (2000). This search is limited to "the outer clothing" of the detained person. *Terry*, 392 U.S. at 30. "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *Adams v. Williams*, 407 U.S. 143, 146 (1972). Officer Walker's pat down of appellant, resulting in the discovery of a gun in appellant's pants, was conducted on a public

---

[5] *See also Morris v. City of Va. Beach*, 58 Va. App. 173, 183 (2011) ("The degree of certitude required by the reasonable suspicion standard is 'considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less demanding than that for probable cause.'" (quoting *Perry v. Commonwealth*, 280 Va. 572, 581 (2010))).

[6] On appeal, appellant contests the legality of his initial seizure and subsequent search. He does not challenge the seizure of the gun on other grounds.

sidewalk within shooting distance of at least himself, Sergeant Roys, and appellant's own companion whose concealed weapon had also been confiscated.  *See Hawkins*, 65 Va. App. at 114 ("Notably, *Terry* authorizes 'necessary measures' to determine whether the person is armed, rather than authorizing a pat down only.").

Based on the totality of the circumstances, the officers' initial inquiry, subsequent seizure, and resulting recovery of the gun from appellant's pants were all permissible actions under the Fourth Amendment.  Accordingly, the trial court did not err in denying appellant's motion to suppress.

## CONCLUSION

For the foregoing reasons, this Court affirms the trial court's judgment.

*Affirmed.*