COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Huff, Russell and Malveaux
Argued by videoconference


RICKY DAVIS PARRISH

                                                        MEMORANDUM OPINION* BY
v.        Record No. 0542-20-2                    JUDGE WESLEY G. RUSSELL, JR.
                                                              MAY 11, 2021

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF MADISON COUNTY
Dale B. Durrer, Judge

S. Page Higginbotham III (Thomas, Watson and Higginbotham,
PLC, on briefs), for appellant.

Leanna C. Minix, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Ricky Davis Parrish was convicted in a bench trial of possession of marijuana with the

intent to distribute, possession of cocaine with the intent to distribute, possession of a firearm by

a convicted felon, possession of a firearm while possessing a controlled substance with the intent

to distribute, and manufacturing marijuana. Pre-trial, Parrish filed multiple motions to suppress

evidence recovered from a search inside the residence where Parrish encountered police.[1] The

trial court denied the motions without reaching the substance of the motions, finding that Parrish

did not satisfy his burden of establishing that he had a reasonable expectation of privacy in the

residence, and thus, lacked standing to challenge the search. Parrish, asserting that the trial court

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] As noted below, police arrested Parrish in the backyard of the residence after
discovering him hiding under a shed.

erred in concluding he lacked a sufficient expectation of privacy in the residence, appeals. For the following reasons, we affirm the trial court.

## BACKGROUND

On an appeal from a trial court's denial of a defendant's motion to suppress, this Court views the evidence "in the light most favorable to the Commonwealth and will accord the Commonwealth the benefit of all reasonable inferences fairly deducible from that evidence." Gregory v. Commonwealth, 64 Va. App. 87, 93 (2014) (quoting Branham v. Commonwealth, 283 Va. 273, 279 (2012)). Furthermore, because Parrish did not renew his motions to suppress at trial, our review of the evidence is constrained by the command of the Virginia Supreme Court in Hill v. Commonwealth, 297 Va. 804 (2019). Specifically, "[w]hen considering whether to affirm the denial of [the] pretrial suppression motion[s]," we consider both the evidence presented at the suppression hearing and "the evidence later presented at trial[,]" id. at 808 (quoting Commonwealth v. White, 293 Va. 411, 414 (2017)); however, in considering "whether to 'revers[e Parrish's] criminal conviction[s] based on an [asserted] erroneous pretrial ruling," we are limited to the evidence presented at the suppression hearing, id. (quoting White, 293 Va. at 414 n.2).[2]

On December 21, 2017, law enforcement officers attempted to serve outstanding arrest warrants on Parrish. Believing him to be there, they proceeded to a residence on Locust Grove Church Road in Madison County, even though Parrish is not an owner or a renter of the home.

---

[2] At oral argument in this Court, Parrish, with credible candor, conceded both that he did not renew the motions to suppress at trial and that, as a result, we are required to view the evidence through the prism described by the Virginia Supreme Court in Hill.

The house belongs to Monique Carpenter, who is the mother of Parrish's minor daughter. Officers identified two vehicles parked at the location that were registered to Parrish.[3]

Shannon Dickson of the Orange County Sheriff's Office, acting in his capacity as a U.S. Marshal, approached the house and, through a bay window, saw Parrish inside. Dickson announced himself as a U.S. Marshal and asked Parrish to come to the door. When Parrish did not comply, Dickson sought the assistance of other officers.

The officers entered the residence with the intent of locating and arresting Parrish on the outstanding warrants. The officers did not find Parrish in the residence; however, upon entry, the officers smelled the odor of marijuana and saw a firearm on the kitchen counter. Having failed to find Parrish in the house, the officers continued searching for him on the property. Ultimately, they found him in the backyard hiding under a shed and placed him under arrest.

Based upon the contraband they had smelled and observed in plain view while inside the home, officers sought a search warrant for the residence. The search warrant was obtained and executed. Additional contraband was discovered that ultimately provided, at least in part, the basis for Parrish's convictions.[4]

Pre-trial, Parrish sought to suppress the evidence recovered from the residence on multiple grounds. In support of his written motions to suppress, Parrish asserted that he "did not live at the home" and that "the officers could not legally enter and search the home of a third party pursuant to an arrest warrant for" Parrish. In a written responsive pleading, the Commonwealth countered that the officers believed that Parrish "lived at [the residence] with his

---

[3] The registrations for each vehicle list an address other than Carpenter's residence as Parrish's address.

[4] Because the sole question before us is whether the trial court erred in concluding that Parrish lacked a reasonable expectation of privacy in the residence for purposes of the Fourth Amendment, we need not detail the items found or where in the residence they were located.

girlfriend and their child in common[,]" and therefore, the officers' entry to serve Parrish with arrest warrants was permitted under the United States Supreme Court's decision in Payton v. United States, 445 U.S. 573 (1980).[5]  Alternatively, the Commonwealth noted that Parrish could not "vicariously assert the Fourth Amendment rights of a third party[,]" and therefore, lacked a reasonable expectation of privacy in the home if he did not live there.

The trial court held a hearing on the threshold issue of whether Parrish had a sufficient interest in the residence to assert a Fourth Amendment claim related to the officers' entry into the premises.  Parrish, testifying in support of his motions, continued to maintain that he did not live at the residence.  He testified that, at the time of his arrest, he lived in Ruckersville with his sister and her three children.  He claimed to sleep at his sister's home "three to five" times a week and stated that he kept clothes, toiletries, personal items, including his birth certificate, and a vehicle at his sister's home.

Parrish also testified regarding his connection to Carpenter's home where he was arrested and that was the subject of the underlying search.  He testified that he visited Carpenter's house in Madison on an average of twice a week to visit his daughter and would spend the evening there "[m]aybe once a week."  It was his intention to stay at the Madison County residence as Carpenter's "guest" on the night of his arrest.

Parrish confirmed that Carpenter owned the Madison County residence and that he had no ownership interest in the home.  He testified that he did not pay any bills associated with the residence and that his driver's license does not list that address as his home.  When asked if he kept any clothing at that residence that would corroborate his intention of staying the night,

---

[5] In Payton, the United States Supreme Court recognized that, "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect *lives* when there is reason to believe the suspect is within."  445 U.S. at 603 (emphasis added).

Parrish responded that he had a black overnight bag, his wallet, toothbrush, and a change of clothes. Although he wears size eleven shoes, he claimed that the size eleven shoes found in a closet at the Madison County residence were not his.

Parrish's sister, Crystal, also testified. She stated that Parrish lived with her and her three children at her Ruckersville home in December 2017 and that he kept his clothes, personal items, and dog at her house. Crystal indicated that Parrish slept at her house "[e]very night[,]" although later conceded that he would sleep elsewhere "[m]aybe once [a] week." She did not know where Parrish stayed when he was not at her house.

Kimberly Morton, Crystal's daughter and Parrish's niece, was eighteen years old at the time of the suppression hearing. She testified that she had been living at the residence in Ruckersville since she was three years old and was still residing there in December 2017. She indicated that Parrish lived there for "[a] while." She said he kept his personal possessions, such as his "clothes [and other] important things that he needed for himself[,]" there. According to Morton, Parrish had his daughter with him at the Ruckersville residence ninety percent of the time. He slept there "[a]ll the time[,]" and there were "not really" any times when he did not sleep at that residence.

Against the backdrop of this evidence, the parties argued whether Parrish had established that he had a sufficient interest in Carpenter's home to allow him to raise a Fourth Amendment challenge to the officers' entry of the home. Parrish argued that the evidence established that, although he was not an owner or a full-time resident of the home, he was an invited, overnight guest, and therefore, had a sufficient Fourth Amendment interest to object to the officers' entry pursuant to Minnesota v. Olson, 495 U.S. 91 (1990).

Responding to Parrish's argument, the Commonwealth argued that Parrish had not established that he was, in fact, an invited overnight guest at Carpenter's home. The

Commonwealth noted that the only evidence to support such an argument was Parrish's testimony, which the Commonwealth characterized as "conclusory" and "self-serving[.]" Noting that significant portions of Parrish's testimony had been refuted by the testimony of Parrish's own witnesses, his sister and niece, the Commonwealth argued that Parrish lacked credibility.

The trial court asked Parrish's counsel why the owner of the property, Carpenter, did not testify that Parrish had been invited to spend the night on the evening in question or otherwise had a "standing invitation" to spend the night. Counsel responded that she was not subpoenaed to testify, and even if she were under subpoena, he believed it likely that she would invoke her Fifth Amendment privilege against self-incrimination due to the attendant circumstances.

After a recess to review the evidence and relevant case law, the trial court announced its decision from the bench. The trial court observed that there was "conflicting evidence from the defense about whether Mr. Parrish was going to be an overnight guest . . . on this night in December" and noted that it had "observed the testimony of the witnesses very carefully[,]" paying particular attention to "the things that they testified to, their ability to recall the things for which they testified, any bias or prejudice that they may have." Based on its observations, the trial court found Crystal and Morton to be credible and that Parrish lacked credibility, specifically noting that "he had some hesitancy in the way he answered questions." Based on its credibility findings, the discrepancies in the testimony regarding how often Parrish stayed at his sister's home, where his child resided, and the lack of any evidence from the owner that Parrish had an invitation, standing or otherwise, to stay at her home that evening, the trial court found that Parrish had failed to establish that he was an invited, overnight guest at Carpenter's home on the day of his arrest.

Given this finding, the trial court concluded that Parrish lacked a sufficient reasonable expectation of privacy in Carpenter's residence to raise a Fourth Amendment challenge to the

officers' entry into Carpenter's residence and the subsequent search. Accordingly, the trial court declined to suppress both the evidence the officers had seen in plain view upon their entry into the residence and that which they discovered upon execution of the search warrant that was predicated on what had been smelled and observed in plain view.

Parrish was convicted and now appeals. He asserts that the trial court committed reversible error in concluding that he had failed to establish that he had "standing under the Fourth Amendment to contest the search of [Carpenter's home] where he was an overnight guest and had a reasonable expectation of privacy in that home."

ANALYSIS

I. The Fourth Amendment and owners, overnight guests, and mere visitors

In pertinent part, the Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" The amendment's protections belong to individuals, not society at large. Rakas v. Illinois, 439 U.S. 128, 133-34 (1978) ("Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." (quoting Brown v. United States, 411 U.S. 223, 230 (1973))). As a result, "[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." Id. at 134.

Obviously, an individual enjoys the amendment's protections in his or her own home and regarding his or her own papers and effects. The amendment's protections also can apply, however, to places and property not owned by the individual. Id. at 142 (recognizing as "unremarkable" the "proposition that a person can have a legally sufficient interest in a place other than his own home so that the Fourth Amendment protects him from unreasonable governmental intrusion into that place"). The question is whether an individual has a personal

and constitutionally cognizable "reasonable expectation of privacy" in the place or thing

searched. Oliver v. United States, 466 U.S. 170, 177 (1984) (quoting Katz v. United States, 389

U.S. 347, 360 (1967) (Harlan, J., concurring)).[6]

Pertinent here, an invited, overnight houseguest has such a cognizable reasonable

expectation of privacy in the home in which he or she is a guest. As the United States Supreme

Court has explained,

> To hold that an overnight guest has a legitimate expectation
> of privacy in his host's home merely recognizes the everyday
> expectations of privacy that we all share. Staying overnight in
> another's home is a longstanding social custom that serves
> functions recognized as valuable by society. We stay in others'
> homes when we travel to a strange city for business or pleasure,
> when we visit our parents, children, or more distant relatives out of
> town, when we are in between jobs or homes, or when we
> house-sit for a friend. We will all be hosts and we will all be
> guests many times in our lives. From either perspective, we think
> that society recognizes that a houseguest has a legitimate
> expectation of privacy in his host's home.

Olson, 495 U.S. at 98.

Although an individual enjoys Fourth Amendment protections while an overnight guest

in another's home, the amendment's protections do not necessarily flow to an individual who is

---

[6] Both the parties and the trial court interchangeably referred to the relevant inquiry as one of whether Parrish had "standing" to raise a Fourth Amendment claim or had a reasonable expectation of privacy in the home searched. In context, questions of "standing" and "reasonable expectation of privacy" are shorthand ways of stating that a person has a sufficient interest to allow him to raise a Fourth Amendment challenge. Although the "reasonable expectation of privacy" formulation has become more common, both courts and litigants have used the phrases interchangeably over the years with both being references to a person having a sufficient interest to raise a Fourth Amendment challenge. See, e.g., Rakas, 439 U.S. at 140 (addressing the parties' Fourth Amendment standing argument before concluding that the issue is better described using the privacy rubric "of substantive Fourth Amendment law"); Hurley v. Commonwealth, 36 Va. App. 83, 88 n.1 (2001) (defining the Fourth Amendment "standing" inquiry as whether a person has "a legitimate expectation of privacy" (internal quotation marks and citation omitted)); Commonwealth v. Holloway, 9 Va. App. 11, 18 (1989) (recognizing that a person who lacks an "expectation of privacy" in an object lacks "standing to complain of the property's search and seizure").

permissibly on the premises but not an overnight guest.  See Minnesota v. Carter, 525 U.S. 83, 90 (1998) (recognizing that, although "an overnight guest in a home may claim the protection of the Fourth Amendment, . . . one who is merely present with the consent of the householder may not").  Thus, the availability of the amendment's protections depends on whether the nature and circumstances surrounding a person's presence in the home of another gives rise to a reasonable expectation of privacy in that home.[7]

## II.  Standard of review

Whether a person has a sufficient reasonable expectation of privacy in a location generally involves a mixed question of fact and law subject to *de novo* review.  Sharpe v. Commonwealth, 44 Va. App. 448, 454 (2004).  In conducting our review, however, we are "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them" and must "give due weight to the inferences drawn from those facts by resident judges[.]"  Hawkins v. Commonwealth, 65 Va. App. 101, 106 (2015) (quoting McGee v. Commonwealth, 25 Va. App. 193, 198 (1997) (*en banc*)).  "The factual findings to which [we] must defer include the trial court's assessment of the credibility of the witnesses."  Williams v. Commonwealth, 71 Va. App. 462, 475 (2020).  Finally, we note that, as the party asserting a

---

[7] Faced with such a situation in Carter, the United States Supreme Court explained that

> If we regard the overnight guest in Minnesota v. Olson as typifying those who may claim the protection of the Fourth Amendment in the home of another, and one merely "legitimately on the premises" as typifying those who may not do so, the present case is obviously somewhere in between.  But the purely commercial nature of the transaction engaged in here, the relatively short period of time on the premises, and the lack of any previous connection between respondents and the householder, all lead us to conclude that respondents' situation is closer to that of one simply permitted on the premises.

525 U.S. at 91.

reasonable expectation of privacy in Carpenter's residence, Parrish bore the burden of proof in the trial court. Sharpe, 44 Va. App. at 455.

### III. Parrish's status is a question of historical fact

As framed by Parrish in the trial court and on appeal, the issue here is whether he was an invited overnight guest who enjoyed Fourth Amendment protections in Carpenter's home. Thus, the appeal does not turn on mixed questions of law and fact, but rather turns on the resolution of one question of historical fact: Did the evidence at the suppression hearing establish that Parrish was an invited overnight guest in Carpenter's home? If it did, he possessed a reasonable expectation of privacy in Carpenter's home and was entitled to have the trial court consider the merits of his suppression motions. If it did not, the trial court correctly declined to reach the merits of those motions.

The evidence on which Parrish primarily relies comes from one source: his testimony. He notes that he testified that he had permission to be there as an overnight guest, he routinely stayed there to be with his daughter who he claims resided there, he had an overnight bag and toothbrush, and planned to spend the night.[8] From this testimony, he reasons that the evidence established he was an overnight guest entitled to the protections of the Fourth Amendment as it relates to the residence.

In making this argument, Parrish misunderstands his burden. Although his testimony, *if believed*, provided a sufficient basis to support a conclusion that he was an invited overnight guest, the trial court was not required to believe him, and therefore, his testimony did not conclusively establish that he was, in fact, an invited overnight guest. As the party with the burden of proof, Parrish not only had to adduce sufficient evidence to allow a conclusion that he

---

[8] We note that the only evidence of the toothbrush and overnight bag was Parrish's testimony. Neither a toothbrush nor an overnight bag was admitted into evidence.

was an invited overnight guest, that evidence also had to persuade the trial court on that question of historical fact.

Here, the trial court remained unpersuaded. Referencing the manner in which Parrish testified, the trial court found that his testimony lacked credibility. As noted above, we are bound by that credibility finding, Williams, 71 Va. App. at 475, which, standing alone, arguably is sufficient to require us to affirm the trial court's conclusion.

The credibility finding based on the manner in which Parrish testified, however, does not stand alone. As the trial court noted, there were substantial inconsistencies between Parrish's testimony and the testimony of his sister and niece, both of whom the trial court found to be credible. By way of example, the testimony of his sister and niece contradicted Parrish on key points regarding how often he stayed somewhere other than his sister's house and the location of Parrish's daughter's primary residence. These inconsistencies further undermined Parrish's credibility, providing an additional basis for the trial court to conclude that Parrish's testimony had failed to carry his burden to establish that he was an overnight guest on the day of his arrest.[9] Given the deference we owe the trial court's determination on questions of historical fact, we cannot say it erred in concluding that Parrish failed to carry his burden.

In reaching this conclusion, we again stress that we are bound by the "trial court's findings of historical fact unless [they are] 'plainly wrong' or without evidence to support them[.]" Hawkins, 65 Va. App. at 106. A rational factfinder certainly could have heard the

---

[9] Given this conflict in testimony, the lack of any evidence apart from Parrish's testimony of an express invitation from the owner took on additional significance. Although testimony of an owner is not *required* to establish that one is an overnight guest and the lack of testimony from an owner does not give rise to any presumption regarding a person's potential status as a guest, such evidence could have served to support Parrish's testimony regarding his frequent overnight stays or conversely confirmed the testimony of his sister and niece that Parrish almost always, if not always, stayed at his sister's home. Accordingly, it was permissible for the trial court to recognize that potentially dispositive evidence was missing.

testimony, coupled it with the facts that not one, but two cars registered to Parrish were parked at Carpenter's home and that Parrish was sufficiently associated with the residence that law enforcement sought him there, and concluded that Parrish had a reasonable expectation of privacy in Carpenter's residence. Rather, we hold that the evidence adduced at the suppression hearing did not *compel* that conclusion and that the evidence was such that the trial court's factual finding was not plainly wrong.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

<u>Affirmed.</u>