COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Athey, Ortiz and Chaney
Argued at Norfolk, Virginia


IVAN DARNELL PALMER, JR.

MEMORANDUM OPINION* BY
v.     Record No. 0922-23-1          JUDGE CLIFFORD L. ATHEY, JR.
                                      AUGUST 13, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG
AND COUNTY OF JAMES CITY
Holly B. Smith, Judge

Charles E. Haden for appellant.

Jennifer L. Guiliano, Assistant Attorney General (Jason S. Miyares,
Attorney General; Matthew P. Dullaghan, Senior Assistant Attorney
General, on brief), for appellee.


Based on a conditional guilty plea, the Circuit Court of the City of Williamsburg and

County of James City ("trial court") convicted Ivan Darnell Palmer, Jr. ("Palmer") of possession

of a Schedule I or II controlled substance and sentenced him to ten years of incarceration, with

eight years suspended. On appeal, Palmer assigns error to the trial court's denial of his motion to

suppress evidence found inside his truck during a traffic stop. For the following reasons, we

affirm the trial court's judgment.

I. BACKGROUND

On appeal from the denial of a motion to suppress evidence, we "review[] the evidence in

the light most favorable to the Commonwealth, as the prevailing party below." *Bagley v.*

*Commonwealth*, 73 Va. App. 1, 8 n.1 (2021). Beginning in October of 2021, James City County

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

Police Investigator David Rochard ("Investigator Rochard") was assigned to the Virginia State Police's "Tri-Rivers Drug Task Force." The task force was attempting to locate and arrest Alton White ("White"), a convicted felon who was subject to numerous outstanding arrest warrants. Investigator Rochard, who was familiar with White's appearance from interactions "[s]everal years prior," described White, during the subsequent suppression hearing, as "a taller black male" with a "slender build."

On October 7, 2021, several members of the task force conducted surveillance of a residence where they believed White was living. Investigator Rochard shared photographs of White with the other members of the task force, including Investigator Joshua Drury ("Investigator Drury"). While parked across the street from the surveilled residence, approximately fifty yards away, Investigator Rochard identified a "taller black male" with "a slender build" who appeared to leave in a "silver pickup truck [that had] pulled into the driveway." Although Investigator Rochard had not specifically seen the suspect enter the pickup truck, the suspect was no longer standing in the driveway when the pickup truck pulled out of the driveway. Moments later, Investigator Rochard, was able to view the two occupants in the truck as they passed by him on the street.

Investigator Drury, who testified that he was "just up the road" when the truck passed by, was initially only able to confirm that the truck's passenger "resemble[ed]" White. Investigator Drury then followed the truck in an unmarked patrol vehicle for several minutes before coming to a stop directly beside the truck at a traffic light. From about four feet away, the truck's passenger looked directly at Investigator Drury for "a few seconds," permitting Investigator Drury to "positively" identify him as White.

As a result, members of the task force activated the emergency lights on their law enforcement vehicles and executed "a high-risk felony stop" of the silver pickup truck. The truck subsequently stopped at a gas station, and numerous officers had their "weapons drawn."

Investigator Drury, using the police vehicle's public address system, instructed the occupants of the truck to exit the vehicle. The passenger complied with Investigator's Drury's instructions and subsequently identified himself as White but could not produce any identification.

Next, Investigator Drury, with his weapon holstered, approached Palmer who was driving the truck and asked him whether White had left any items inside the truck. In response, Palmer stated that he "didn't know." Investigator Drury then asked Palmer if he would consent to Drury searching the passenger area of the truck, to which, Palmer "grant[ed] that consent." An accompanying officer then opened the front passenger's side door of the truck while Palmer remained in the driver's seat. When the officer told Investigator Drury that he saw "a gun in the back pocket of the passenger's door," Investigator Drury asked Palmer "to step out of the car" because he was a "tall guy," and the officer "didn't want to have him in close proximity to any [other] weapons." Palmer initially refused to exit the truck. However, after asking Investigator Drury if he "was going to search the whole vehicle," and Drury replying, "no, just that passenger area," Palmer exited the truck. Palmer was not handcuffed nor was he placed under arrest after exiting the truck. In fact, Palmer stood near the truck's rear driver's side door while watching through the truck's window as Investigator Drury searched the passenger area of the vehicle. After he "secured" the firearm, Investigator Drury also found "a piece of waxy-styled paper with a white powder in it resembling cocaine" "stuffed between the passenger seat and" the "center console." Palmer "did not admit" that he possessed either the gun or the suspected cocaine.

Following the search of the passenger area, Investigator Drury advised Palmer that he "would be searching the whole vehicle" and asked "if there were any more drugs." Palmer replied that "there was a dollar bill in the driver's door that had personal use cocaine in it." Investigator Drury then searched the rest of the truck and found "that dollar bill" along with

- 3 -

"another firearm in the glove box" as well as "several magazines . . . containing ammunition" concealed in the rear, driver's side door.

Based on the foregoing, a grand jury indicted Palmer for possession of a Schedule I or II controlled substance. Palmer then moved to suppress the evidence obtained during the search of his truck. Palmer, a convicted felon, testified during the suppression hearing that he had picked up White from the residence police were surveilling. He claimed that White spotted the unmarked police vehicles prior to the traffic stop and had attempted to avoid looking directly at Investigator Drury while both vehicles were next to each other at the stoplight. Palmer further testified that after the traffic stop, he complied with the officers' instructions and spoke to Investigator Drury. Palmer maintained that he had limited his consent to search his truck to only the front seat passenger area to determine whether White had left anything inside his vehicle. Palmer confirmed that the gun located in the passenger door was White's as well as the cocaine in the "wax paper" which had been located "[i]n the door right beside the gun." Palmer denied that the cocaine was between the passenger seat and the center console and admitted to his "own bill in [his] door" only after the officers had announced that they would search the entire truck.

After the close of the evidence, Palmer moved to strike, arguing that both the traffic stop and the subsequent search were constitutionally infirm. First, he maintained that the officers did not have sufficient information to reasonably suspect that White was the truck's passenger at the time of the stop. Palmer emphasized that Investigator Rochard was 50 yards away from the residence and provided only a vague description of the man who left the house. Palmer also stressed that there was "conflicting testimony" about whether the truck's passenger looked at Investigator Drury at the traffic light. Next, Palmer contended that the officers unconstitutionally searched the "entire truck." He insisted that he had consented to a search of only a "portion" of the truck," so the officers could determine if White had left anything behind.

Hence, Palmer argued that the search of the entire truck "exceeded any automobile exception." Thus, he contended that his consent "was not voluntarily made due to the nature of the stop."

The trial court denied the motion, finding that there was reasonable suspicion to stop the truck after Investigator Drury positively identified White, based on photographs he had recently seen, when White looked "right at him" at the stoplight. Next, the trial court found that Palmer had consented to the initial search, which revealed the gun and suspected cocaine in the wax paper. The court emphasized that Palmer then admitted that the "other item" was in the driver's door.

Following the trial court's ruling, Palmer entered a "conditional guilty plea" to the charge. During the plea colloquy, the trial court explained that the plea preserved Palmer's right to appeal "the decision the [c]ourt [had] just made" on the motion to suppress. The court also confirmed that the Commonwealth had "no objection" to a "conditional guilty plea."[1] Following the colloquy, the Commonwealth admitted a certificate of analysis demonstrating that the substance found in the dollar bill was cocaine. The trial court accepted Palmer's plea and convicted him of possession of a Schedule I or II controlled substance.

---

[1] "With the approval of the court and the consent of the Commonwealth, a defendant may enter a conditional plea of guilty in a misdemeanor or felony case in circuit court, reserving the right, on appeal from the judgment, to a review of the adverse determination of any specified pretrial motion." Code § 19.2-254. The Commonwealth argues that Palmer's assignment of error is waived because the trial court did not give its "actual approval" of a conditional guilty plea. It contends that the trial court only "discussed" entering such a plea and stresses that the conviction order "states only that Palmer pleaded 'guilty.'" Palmer, however, explicitly stated that he was entering a "conditional guilty plea." The trial court reviewed the nature of a conditional guilty plea with Palmer, and explained that it needed to conduct a colloquy with him before it could "accept[] [his] conditional guilty plea." After that colloquy, the trial court accepted the plea. Thus, the Commonwealth's argument is misguided.

## II. ANALYSIS

### A. *Standard of Review*

"'When challenging the denial of a motion to suppress evidence,' the appellant 'bears the burden of establishing that reversible error occurred.'" *Park v. Commonwealth*, 74 Va. App. 635, 645 (2022) (quoting *Mason v. Commonwealth*, 291 Va. 362, 367 (2016)). We "examine[] the trial court's application of the law *de novo*, including its assessment of whether reasonable suspicion or probable cause supported a search." *Bagley*, 73 Va. App. at 13. "However, we defer to the trial court's 'findings of historical fact,' taking care to review them 'only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.'" *Id.* (quoting *Malbrough v. Commonwealth*, 275 Va. 163, 169 (2008)).

### B. *The traffic stop was supported by reasonable articulable suspicion.*

Palmer argues that the traffic stop was not justified by reasonable suspicion. He contends that Investigator Rochard provided only a vague "physical description of the male who emerged from the house," which did not identify him as White. He also maintains that Investigator Drury "had only seen a photo of White." Thus, without any evidence that the truck committed a traffic infraction, Palmer concludes that the officers "lacked an adequate basis for conducting" the traffic stop. We disagree.

"[S]topping a motor vehicle and detaining the operator constitute a 'seizure' within the meaning of the Fourth Amendment." *Mitchell v. Commonwealth*, 73 Va. App. 234, 246 (2021) (alteration in original) (quoting *Lowe v. Commonwealth*, 230 Va. 346, 349 (1985)). "The stop 'seizes' all occupants of the vehicle." *Id.* (quoting *Brendlin v. California*, 551 U.S. 249, 255 (2007)); *see also Heien v. North Carolina*, 574 U.S. 54, 60 (2014) ("A traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment."). "Nevertheless, an officer may stop a

- 6 -

vehicle, effectively seizing its occupants, when 'there is at least articulable and reasonable suspicion . . . that either the vehicle or an occupant is otherwise subject to seizure for violation of law." *Mitchell*, 73 Va. App at 246 (quoting *Delaware v. Prouse*, 440 U.S. 648, 663 (1979)).

"There are no bright line rules" for "determining whether a reasonable and articulable suspicion exists to justify an investigatory stop." *Id.* (quoting *Hoye v. Commonwealth*, 18 Va. App. 132, 134-35 (1994)). The standard requires "an officer to possess, at the time of the stop, 'a particularized and objective basis for suspecting the particular person stopped.'" *Id.* (quoting *Heien*, 574 U.S. at 60). A "mere hunch" is insufficient, but "the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Id.* at 246-47 (quoting *Bland v. Commonwealth*, 66 Va. App. 405, 413 (2016)). Importantly, "[t]he possibility that an officer ultimately may prove to be mistaken . . . does not negate, in and of itself, the officer's reasonable, articulable suspicion." *Id.* at 247 (citing *Shifflett v. Commonwealth*, 58 Va. App. 732, 736 (2011)).

Here, it is uncontested that White was wanted as a result of outstanding arrest warrants, and Investigator Rochard was familiar with White from prior interactions. As part of the task force's plan to surveil White's suspected residence and arrest him, Investigator Rochard was positioned across the street approximately fifty yards from the house. Investigator Rochard saw a man who resembled White leave the house as Palmer's truck pulled into the driveway of the surveilled home. The pickup truck then left the driveway of the house moments later with two occupants, and the man who resembled White was no longer in the driveway. Investigator Drury, who had been shown a photograph of White, began following the truck as it passed by him, eventually stopping beside the truck at a stoplight, and looking directly at the passenger from four feet away. Drury testified that he recognized the truck's front seat passenger as White from the

photographs he had viewed earlier. Hence, at that point, the officers possessed a reasonable, articulable suspicion that the truck's passenger was White who had outstanding warrants for his arrest. That suspicion was not negated by the possibility that Investigator Drury's identification of White could have been mistaken. Thus, based on the officer's reasonable belief that White was the passenger seated in the truck, the officers possessed a reasonable, articulable suspicion sufficient to execute a stop of the truck.

 C. *The search of the truck did not violate Palmer's Fourth Amendment rights.*

Palmer also argues that, with the exception of the passenger area, law enforcement unconstitutionally searched his truck. Palmer emphasizes that he consented to the search of "the area around the front passenger seat of the truck" only so that police could determine whether White had left any items in the truck; he insists that his consent to a search never extended to a search of the entire interior of the truck. Thus, he contends that when the officers found the gun in the passenger door, "the authorized search was complete." Palmer then accuses law enforcement of impermissibly "us[ing] the discovery of the firearm as a justification for . . . search[ing] the entire vehicle." Any search beyond his initial consent was not permissible, in Palmer's view, because he had not previously committed any crimes or made any "incriminating admissions." In addition, he argues that the search beyond the passenger area was not permissible because the gun found in the passenger area was not his and the arrest of White had already been executed. He also challenges the officers' contention that the cocaine in the "waxy paper" found between the front passenger seat and the center console was found during their initial search of the passenger area and argues instead that it was found during the search of the entire truck. We disagree.

The Fourth Amendment generally requires that a search "be conducted pursuant to a warrant issued by an independent judicial officer," but various well-established exceptions to the

warrant requirement exist. *California v. Carney*, 471 U.S. 386, 390 (1985). Two such exceptions are applicable here.

First, "'a search authorized by consent is wholly valid'" under the Fourth Amendment because "'[w]here consent is freely and voluntarily given, probable cause and a search warrant are not required.'" *Hawkins v. Commonwealth*, 65 Va. App. 101, 107 (2015) (first quoting *Kyer v. Commonwealth*, 45 Va. App. 473, 483 (2005) (en banc); and then quoting *Limonja v. Commonwealth*, 8 Va. App. 532, 540 (1989)). Such consent "must be unequivocal, specific and intelligently given" and "is not lightly to be inferred." *Id.* (quoting *Jean-Laurent v. Commonwealth*, 34 Va. App. 74, 78 (2000)). A search based on consent must remain "within the scope of the consent given." *Grinton v. Commonwealth*, 14 Va. App. 846, 850-51 (1992) (citing *United States v. Martinez*, 949 F.2d 1117, 1119 (11th Cir. 1992)).

The second applicable exception is the "automobile exception." *See Collins v. Virginia*, 584 U.S. 586, 591 (2018) (citing *Carroll v. United States*, 267 U.S. 132 (1925)), *rev'g* 292 Va. 486 (2016) (*Collins I*), *aff'd on other grounds on remand*, 297 Va. 207 (2019) (*Collins II*). That exception provides that due to the "pervasive regulation of vehicles capable of traveling on the public highways" and their "ready mobility," officers may lawfully search a motor vehicle without a warrant as long as they have probable cause. *Id.* (quoting *Carney*, 471 U.S. at 390, 392); *see Fore v. Commonwealth*, 220 Va. 1007, 1010-11 (1980). "Probable cause . . . exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Curley v. Commonwealth*, 295 Va. 616, 622 (2018) (quoting *Jones v. Commonwealth*, 277 Va. 171, 178 (2009)). "Probable cause takes into account the 'totality of the circumstances surrounding the search.'" *Bunch v. Commonwealth*, 51 Va. App. 491, 495 (2008) (quoting *Cost v. Commonwealth*, 275 Va. 246, 251 (2008)). The standard "does not demand any showing that [the officer's] belief be correct or more likely true than false." *Evans*

- 9 -

*v. Commonwealth*, 290 Va. 277, 287 (2015) (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)). Rather, "the proper inquiry focuses on what an objective officer could reasonably believe." *Id.* (quoting *United States v. Grissett*, 925 F.2d 776, 778 (4th Cir. 1991)).

Here, Palmer concedes that he "consented to a search of the area around the front passenger seat of the truck" so that the officers could determine if White, who had been sitting there, had left any personal property behind. During that permissible warrantless search,[2] the officers found a gun in the passenger door and cocaine "stuffed between the passenger seat and the center console."[3] Palmer "did not admit" that either item was his. From those circumstances, the officers had a reasonable suspicion that White (1) had secreted the gun and cocaine before complying with the officers' instructions to get out of the truck, and (2) might have discarded other firearms or contraband in other parts of the truck. *See Powell v. Commonwealth*, 27 Va. App. 173, 178-79 (1998) (finding that the evidence supported "the inference that [the] appellant possessed the bag of cocaine and discarded it" as "officers approached" him).

Thus, Investigator Drury possessed probable cause to believe that other controlled substances could be in the truck; therefore, searching the entire truck was justified under the automobile exception. Prior precedent firmly establishes that handguns are a common tool of the

---

[2] Although Palmer's brief quotes the entirety of his trial counsel's argument at the suppression hearing, including portions wherein counsel argued that Palmer did not voluntarily consent to the search, he does not challenge the voluntariness of his consent on appeal. In fact, as noted, he concedes that he consented to a search of the passenger compartment of his truck.

[3] The record disproves Palmer's contention that the officers did not find the cocaine next to the passenger seat until after they had completed the initial search. Investigator Drury testified that he told Palmer he was going to search the entire vehicle "based on the drugs in the center console." In addition, Palmer himself testified that the officers found both "the gun and [White's] crack" while searching the passenger compartment with his consent. Palmer stated that *after* they found both of those items, they "decided to search [his] whole vehicle." Those "statements of fact and the necessary inferences therefrom are binding upon him." *Massie v. Firmstone*, 134 Va. 450, 462 (1922).

drug dealer's trade. *See Dixon v. Commonwealth*, 11 Va. App. 554, 557 (1991). Indeed, the simultaneous possession of guns and controlled substances often indicates an intent to distribute the controlled substances. *Wright v. Commonwealth*, 53 Va. App. 266, 283 (2009) (providing "examples of ways in which possessing a firearm might 'further, advance, or help' the crime of possessing drugs with an intent to distribute them" (quoting *United States v. Ceballos-Torres*, 218 F.3d 409, 412 (5th Cir. 2000)). As applied here, upon finding the gun and cocaine near the truck's passenger seat, "an objective officer could reasonably believe" that additional controlled substances, potentially for distribution, were elsewhere in the truck, establishing probable cause. *Evans*, 290 Va. at 287 (quoting *Grissett*, 925 F.2d at 778). Importantly, the record need not show that such a belief was "correct or more likely true than false." *Id.* (quoting *Brown*, 460 U.S. at 742); *see also Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983) (observing that "innocent behavior frequently will provide the basis for a showing of probable cause"). Instead, it is sufficient that under the totality of the circumstances in this case such a belief was objectively reasonable. *Curley*, 295 Va. at 622. Thus, Investigator Drury's warrantless search of the truck was justified under the automobile exception.

## III. CONCLUSION

In sum, Investigator Drury had reasonable articulable suspicion to stop Palmer. Palmer consented to a search of the passenger area of his truck so that police could determine if White had left any personal items behind. When that search resulted in law enforcement finding both a gun and cocaine, the officers were entitled to search the remainder of the truck without a warrant. Accordingly, we affirm the trial court's judgment denying the motion to suppress.

*Affirmed.*